NOT FOR PUBLICATION                                    [Docket No. 23]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

EDWARD H. FLEMMING,

       Plaintiff,

   v.                                   Civil Action No.
                                         10-cv-1958 RMB/KMW
JOHN NETTLETON and TOWNSHIP OF
PENNSAUKEN POLICE DEPARTMENT,           **OPINION**

       Defendants.

Appearances:

Robert Aaron Porter
Bafundo Porter Borbi & Clancy
1940 E. State Highway 70
P.O. Box 5372
Cherry Hill, NJ 08034
Attorneys for Plaintiff

Paola F. Kaczynski
William J. Ferren & Associates
1500 Market Street, Suite 2920
Philadelphia, PA 19102
Attorneys for Defendants

**BUMB**, UNITED STATES DISTRICT JUDGE:

   Defendants John Nettleton ("Nettleton") and Township of Pennsauken Police Department ("Pennsauken") (collectively, the "Defendants") have moved for summary judgment.  For the reasons that follow, that motion is GRANTED.

I.   Background

On July 19, 2009, Nettleton, then a sergeant in the Pennsauken Township Police Department, received a report of a suspicious death at the corner house on 42nd and Camden, 2201 42nd Street, in Pennsauken, New Jersey. Defendants' Statement of Material Facts Not in Dispute ¶ 4-6. Nettleton arrived at 42nd and Camden at around 6:00pm. Id. ¶ 10. The scene at 2201 42nd Street was chaotic as: (1) Nettleton and other officers discovered a dead body in a heavily decomposed state; (2) occupants of the home were attempting to flee the home and generally being uncooperative; (3) family members of the deceased were arriving at the home. Id. ¶¶ 11-14. Nettleton was charged with coordinating the scene. Id. ¶ 11. In that capacity, Nettleton instructed officers to detain individuals fleeing the home, spoke with family members, and coordinated with the detective division and prosecutor's office. Id. ¶ 13-14.

At the same time, Plaintiff Edward Flemming ("Plaintiff") was returning home to 42nd Street, where he resides, via Camden Avenue, in his truck. Plaintiff's Statement of Material Undisputed Facts ¶ 5. Plaintiff was approaching 42nd Street, while driving on Camden Avenue, when he noticed a police car parked at the intersection of the two streets. Id. Plaintiff turned left onto 42nd Street where he saw four police cars parked on the right side of the street; legal parking is permitted on the left side of the street. Plaintiff's Statement of Material

2

Undisputed Facts ¶ 5.  At that time, Plaintiff realized that the police cars on the street were blocking access to his home.  Id. ¶ 10.  Plaintiff went about 40 feet further and rolled down the window, asking a group of officers "if he could pull up so he could get into his house."  Id. ¶ 11.

Nettleton then informed Plaintiff that he was approaching a crime scene.  Id. ¶ 12.  Nettleton stuck his head inside the window and told Plaintiff that he was not wearing his seatbelt and instructed Plaintiff to pull over.  Id.  Plaintiff complied.  Deposition of Edward Flemming at 21:8-12.  Nettleton then asked Plaintiff for his license and registration.  Plaintiff's Statement of Material Undisputed Facts ¶ 14.  Without warning to Nettleton, Plaintiff then opened the driver's side door of his truck.  Id. ¶ 15.  According to Plaintiff, it was "natural" for him to open his door in response to Nettleton's request, because he is "a big guy" and, by opening the door, he had more room to lean to the left to retrieve his wallet from his right back pocket with his right hand.  Plaintiff's Deposition Transcript at 30:17-31:7.  When Plaintiff's arm was fully extended to open the door, Nettleton, who was about two to three feet from the door, blocked the door with his hand and pushed back and closed the door.  Plaintiff's Statement of Material Undisputed Facts ¶ 16; Deposition of John Nettleton at 18:11-14, 55:24-56:4; Deposition of Edward Flemming at 32:12-14, 34:6-10.  The parties

3

differ in their characterization of Nettleton's closing of the door; Plaintiff claims Nettleton "slammed" it shut while Nettleton claims he "carefully" shut it. Plaintiff's Statement of Material Undisputed Facts ¶¶ 17-18.  In either case, Plaintiff immediately felt a pop in his shoulder.  Id. ¶ 16. Plaintiff was subsequently diagnosed with a torn rotator cuff as a result of Nettleton's pushing of the door.  Id. ¶ 17. According to Nettleton, while he did not feel "threatened" during this incident with Plaintiff, he was concerned because Plaintiff's conduct had the potential to disrupt the investigation and because Plaintiff was acting disorderly and in an irrational manner.  Defendant John Nettleton's Answers to Plaintiff's Interrogatories ¶ 1; Deposition of John Nettleton at 54:15-55:1.

Plaintiff now asserts: (1) a claim under 42 U.S.C. § 1983 for excessive force against Nettleton based on his shoulder injury (Complaint Count 3); and (2) claims under state law against Nettleton and Pennsauken arising out of this episode (Complaint Counts 1 and 2).

II.  Standard

Summary judgment should only be granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue is genuine only if there is a sufficient evidentiary

basis on which a reasonable jury could find for the non-moving party, and a factual dispute is material only if it might affect the outcome of the suit under governing law." Mollo v. Passaic Valley Sewerage Comm'rs, 406 F. App'x 664, 667 (3d Cir.2011) (quotation and citation omitted).

When deciding the existence of a genuine dispute of material fact, a court's role is not to weigh the evidence; all reasonable "inferences, doubts, and issues of credibility should be resolved against the moving party." Meyer v. Riegel Prods. Corp., 720 F.2d 303, 307 n.2 (3d Cir. 1983). However, "[t]he mere existence of a scintilla of evidence," without more, will not give rise to a genuine dispute for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). In the face of such evidence, summary judgment is still appropriate "[w]here the record . . . could not lead a rational trier of fact to find for the nonmoving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). "Summary judgment motions thus require judges to 'assess how one-sided evidence is, or what a 'fair-minded' jury could 'reasonably' decide.'" Williams v. Borough of W. Chester, Pa., 891 F.2d 458, 460 (3d Cir. 1989) (quoting Anderson, 477 U.S. at 265).

The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions,

5

answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)(internal quotations and citations omitted). Then, "when a properly supported motion for summary judgment [has been] made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250 (internal citations and quotations omitted).

III. Analysis

This Court first addresses Plaintiff's section 1983 claim against Nettleton.  It then addresses Plaintiff's state law claims.

A. Plaintiff's Section 1983 Claim

Plaintiff claims that Defendant's actions in closing shut the door, which caused him to suffer a torn rotator cuff, constitute unlawful excessive force.  Excessive force claims may be analyzed either under a substantive due process "shocks the conscience standard," or, if a seizure has occurred, under a Fourth Amendment reasonableness standard.  Ashton v. City of Uniontown, 459 F. App'x 185, 189 (3d Cir. 2012).  A seizure occurs, and the Fourth Amendment reasonableness standard applies, where "an officer restrains the freedom of a person to walk away" by "physical force or show of authority."  Rivas v.

6

City of Passaic, 365 F.3d 181, 198 (3d Cir. 2004); Gomez v. Feissner, 474 F. App'x 53, 57 (3d Cir. 2012).

Under the Fourth Amendment reasonableness standard, courts assess whether the seizure was objectively unreasonable, without respect to the officer's actual intent or motivation, under the circumstances. Id. In making this inquiry, courts look to the governmental interest at stake and the nature of the intrusion. Curley v. Klem, 499 F.3d 199, 207 (3d Cir. 2007). They must evaluate the use of force "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight and must embody the allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are often tense, uncertain, and rapidly evolving." Rivas, 365 F.3d at 198 (quotation omitted). "[A]ll of the relevant facts and circumstances leading up to the time that the officers allegedly used excessive force" are considered in this analysis. Id.

Here, Nettleton's closing of Plaintiff's driver side door constituted a seizure because it restrained Plaintiff's movement.[1] United States v. Brown, 448 F.3d 239, 245 (3d Cir.

---

[1] Nettleton's pulling over of Plaintiff's car would also constitute a seizure. United States v. Mosley, 454 F.3d 249, 258 (3d Cir. 2006)("Because Fourth Amendment rights are personal rights, when the police pull over a car with a driver and a non-owner passenger, two individual seizures occur simultaneously: seizure of the driver, and seizure of the passenger."); United States v. Swindle, 407 F.3d 562, 566 (2d Cir. 2005)("The temporary detention of individuals during the

(2006)(recognizing that a "seizure occurs when there is . . . 'a laying on of hands or application of physical force to restrain movement, even when it is ultimately unsuccessful.'"). Therefore, whether Nettleton's closing of the door is viewed as part of his effort this Court assesses whether Nettleton's actions in doing so were objectively reasonable under the circumstances. They were.[2] As a general matter, closing the truck door was a reasonable course of action considering: (1) the split-second time frame Nettleton had to react; (2) the need to secure the scene of a potential homicide, a reasonable possibility given the report of a "suspicious death" and the corroborating discovery of a heavily decomposed body, from a potentially disruptive presence; (3) the need for Nettleton to protect himself from being struck by the truck door; (4) the more general security needs of Nettleton, his fellow officers, and others on the scene; and (5) the need to protect against

---

stop of an automobile by the police, even if only for a brief period and for a limited purposes, constitutes a seizure.")(quotations omitted). Because Plaintiff has not challenged the reasonableness of his being pulled over, the Court does not address that seizure. See Bloxson v. Borough of Wilkinsburg, 110 F. App'x 279, 282-83 (analyzing two seizures – traffic stop and subsequent use of force to effect apprehension of plaintiff – as independent seizures and "consider[ing] the reasonableness of both seizures separately.").

[2] Defendants argued that no seizure occurred and that the shocks the conscience standard is applicable. Defendants' Br. in Support of Summary Judge at 3. While this Court disagrees, Plaintiff's claim would also fail under that analysis. "[O]nly the most egregious conduct shocks the conscience" and, for the same reasons Nettleton's conduct was reasonable under the Fourth Amendment analysis that are detailed herein, his conduct does not shock the conscience. Ashton, 459 F. App'x at 189.

what could reasonably have been perceived as a risk of flight by the Plaintiff.[3] Martin v. Malhoyt, 830 F.2d 237, 262 (D.C. Cir. 1987)(Ginsburg, J.)(concluding that grabbing of plaintiff, throwing him back into driver's seat, and slamming door on leg was not unreasonable seizure given concern for safety at scene and risk of flight where plaintiff exited car after defendant officer had asked for license and registration and returned to police car to check them). And there is no evidence that Nettleton exercised more force than necessary to close the door, much less evidence that would allow a jury to conclude that, notwithstanding the "allowance" afforded officers making split-second judgments like Nettleton, the force applied was unreasonably more than necessary. Neither Plaintiff's testimony that Nettleton "slammed" the door, nor Plaintiff's resulting shoulder injury, addresses whether the force used by Nettleton was greater than necessary to close the door. Id. at 262 (concluding that "slamming" of door on plaintiff's leg was not excessive). Substantial force, consistent with Plaintiff's testimony[4], may, in fact, have been necessary to stop the door

---

[3]   While Plaintiff argues that Nettleton's testimony that he did not feel "threatened" by Plaintiff undermines any governmental safety interest that would otherwise justify Nettleton's actions, Nettleton's personal belief is immaterial given that an objective reasonableness standard is applicable. Rivas, 365 F.3d at 198.

[4]   This Court credits Plaintiff's description of Nettleton's closing of the door because, on a motion for summary judgment like here, the Court must adopt the nonmoving party's version of the facts where facts are

9

from hitting Nettleton and push it back. And Plaintiff has presented no expert opinion, or other evidence, that suggests that a particular quantum of force was needed to injure Plaintiff's shoulder in the manner claimed and that force was unreasonably greater than necessary to close the door. In both cases, it was Plaintiff's burden to show that the amount of force used was sufficiently greater than necessary as to be unreasonable, and Plaintiff failed to do so. Texter v. Merlina, 333 F. App'x 680, 682 (3d Cir. 2009)(recognizing that it is the plaintiff's burden to prove claim of excessive force). Accordingly, Plaintiff's Section 1983 excessive force claim is DISMISSED.

    B.    Plaintiff's State Law Claims

Having dismissed Plaintiff's lone federal claim, and with this Court's subject matter jurisdiction premised on federal question jurisdiction[5], this Court must determine whether it will exercise supplemental jurisdiction to hear Plaintiff's state law claims. Kalick v. Northwest Airlines Corp., 372 F. App'x 317, 322 (3d Cir. 2010)(affirming district court's denial of supplemental jurisdiction over state law claims after district court's dismissal of federal claims on summary judgment). Absent extraordinary circumstances, courts should decline to

---

    in dispute. See Meyer v. Riegel Prods. Corp., 720 F.3d 303, 307 n.2 (3d Cir. 1983).

[5] This matter was removed from state court based on federal question jurisdiction and the parties do not appear to be of diverse citizenship.

exercise supplemental jurisdiction over state law claims where all federal claims have been dismissed.  Id.  Because there do not appear to be any extraordinary circumstances warranting supplemental jurisdiction here, this Court declines to exercise supplemental jurisdiction over them.  Id.; Manetti v. Ulker, No. 09-5281, 2012 WL 2903935, at *4 (D.N.J. July 16, 2012)(reaching same conclusion).

    Accordingly, Plaintiff's state law claims are DISMISSED, without prejudice, for lack of subject matter jurisdiction.  Id.

## III. Conclusion

    For all these reasons, Defendants' motion for summary judgment is GRANTED.

                                        s/Renée Marie Bumb
                                        RENÉE MARIE BUMB
                                        United States District Judge

Dated: November 26, 2012